**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MADDOX DEFENSE INC.,** | § | |
| | § | |
| Plaintiff, | § | **CIVIL ACTION NO. 4:26-cv-08000** |
| | § | |
| v. | § | |
| | § | |
| **NEW YORK EMBROIDERY STUDIO INC.,** | § | |
| **and** | § | **JURY TRIAL DEMANDED** |
| **MICHELLE FEINBERG,** | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Maddox Defense Inc. sues New York Embroidery Studio Inc. and Michelle Feinberg and alleges as follows.

## I. NATURE OF THE ACTION

**1.** Maddox Defense Inc. designs and manufactures the AAMI Level 2 disposable isolation gown that the United States Department of Health and Human Services buys to stock the Strategic National Stockpile. Maddox developed that gown to the government's specification and won the federal award that first put it into production.

**2.** In November 2021 Maddox opened its files to New York Embroidery Studio Inc. and to its principal, Michelle Feinberg, so that NYES could be evaluated as a subcontract manufacturer. Before a single document changed hands, all three parties signed a mutual non-disclosure and non-circumvention agreement. Feinberg signed it in her own name, and not only for her company. The agreement chose Texas law, fixed exclusive jurisdiction in the state and federal courts sitting in Harris County and set no ceiling on damages.

**3.** Maddox then disclosed to NYES the information a prospective subcontract manufacturer would need to produce the Maddox gown: the gown design engineered to the government specification; the manufacturing processes used to produce it; the ultrasonic-welding and adhesive-bonding methods underlying those processes; the automation methods Maddox was developing; the identities of Maddox's material and equipment vendors; Maddox's methods for spinning, slitting, packaging, labeling, and documenting the product; and Maddox's cost structure and intended bid price. Maddox also introduced NYES to AirBoss Defense Group, the prime contractor through which Maddox intended to compete for the federal Level 2 gown requirement and brought NYES into that specific procurement opportunity as a prospective subcontract manufacturer.

**4.** NYES and Feinberg used all of the items and information provided by Maddox against Maddox. NYES and Feinberg failed to list the Maddox gown on the NYES FDA establishment registration as the agreements required, which cost the Maddox team its standing on the reopened solicitation (re-competed) requirement. NYES and Feinberg then went directly to HHS, bid the requirement on their own using the Maddox design and process, priced beneath the bid price Maddox had disclosed to them in confidence, and took the award. Feinberg had promised the contracting officer in writing, on the same day she signed the operative annex, that NYES would not market, resell, or replicate the Maddox Level 2 gown, and that any gown NYES offered on its own would be "of a different design and different part number." On information and belief, the gown NYES is producing today is the Maddox design, built by the Maddox process, from the Maddox vendors.

**5.** On September 6, 2024, HHS awarded NYES contract 75A50324C00009, valued at $71,001,333, under the same solicitation. NYES is performing that contract now. Maddox has

never received a dollar from NYES, never consented in writing to any of it, and never agreed to any compensation for the opportunity NYES took.

**6.** Maddox brings this action for breach of the parties' agreement, for misappropriation of its trade secrets under federal and Texas law, and for injunctive relief.

## II. PARTIES

**7.** Plaintiff Maddox Defense Inc. is a corporation organized under the laws of the State of California and registered to conduct business in the State of Texas. Its Texas office is at 8111 Ashlane Way, Suite 203, The Woodlands, Montgomery County, Texas 77382, and it holds and operates a facility in Houston, Harris County, Texas. Maddox holds CAGE Code 6JWW0 and FDA Establishment Registration No. 3017489489.

**8.** Defendant New York Embroidery Studio Inc. is a domestic business corporation organized under the laws of the State of New York on June 3, 2003, New York Department of State ID No. 2914636, with its principal place of business at 307 West 36th Street, 3rd Floor, New York, New York 10018. NYES has designated no separate registered agent. It has designated the Secretary of State of New York as its agent for service of process and has directed that process be mailed to itself at 307 West 36th Street, 3rd Floor, New York, New York 10018. NYES may therefore be served under Fed. R. Civ. P. 4(h)(1)(A) and 4(e)(1) by service on the New York Secretary of State under N.Y. Business Corporation Law section 306, by delivery to an officer or managing agent under Fed. R. Civ. P. 4(h)(1)(B), or by the service by mail to which it separately consented in paragraph 19 of the parties' agreement.

**9.** Defendant Michelle Feinberg is an individual who resides in New Jersey and who gave 4 Hacklorn Lane, Scotch Plains, New Jersey 07076 as her address in the parties' agreement.

She may be served at that address or wherever she may be found, and she has separately consented to service by delivery to that notice address.

## III. JURISDICTION AND VENUE

**10.** This Court has subject-matter jurisdiction over the federal trade-secret claim under 28 U.S.C. section 1331 and 18 U.S.C. section 1836(c), and supplemental jurisdiction over the remaining claims under 28 U.S.C. section 1367(a) because they arise from the same case or controversy.

**11.** This Court independently has diversity jurisdiction under 28 U.S.C. section 1332(a)(1). Maddox is a citizen of California, the state under whose laws it is incorporated, and of the state in which it maintains its principal place of business. NYES is a citizen of New York. Feinberg is a citizen of New Jersey. Complete diversity exists on either view of Maddox's principal place of business, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**12.** This Court has personal jurisdiction over both defendants by their express consent. Paragraph 19 of the parties' agreement states that the parties "irrevocably submit to the exclusive jurisdiction of the state and federal courts sitting in the county of Harris, State of Texas," and that each party "irrevocably waive[s], and agree[s] not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any such court, or that such suit, action or proceeding is improper."

**13.** Venue is proper in this district under 28 U.S.C. section 1391(b) and under paragraph 19 of the agreement. The Houston Division is the division of this Court sitting in Harris County.

**14.** Defendants also waived personal service. Paragraph 19 provides that each party "irrevocably waives personal service of process and consents to the process being served in any such suit, action or proceeding by receiving a copy thereof sent to the address in effect for notices to it under this instrument."

## IV. FACTUAL BACKGROUND

### A. Maddox develops the Level 2 gown for the federal government

**15.** Maddox is a defense and medical products manufacturer. Among other products, it designs and manufactures single-use AAMI Level 2 isolation gowns for federal customers, and it operates manufacturing facilities at 1425 Ohlendorf Road, Osceola, Arkansas and 7510 Ardmore Street, Houston, Texas.

**16.** In 2020 the federal government solicited domestic production of isolation gowns for the Strategic National Stockpile. Maddox won that award. To perform it, Maddox engineered a Level 2 gown to the government's written specification and built the production line, tooling, cutting patterns, material specifications, and quality processes needed to make it at federal volume.

**17.** That design and the process behind it are not public. The government specification states a performance standard. It does not tell a manufacturer how to build a gown that meets the standard at the required cost, throughput, and defect rate. Maddox solved that problem, and the solution is the asset at issue here.

**18.** The specification can be met by more than one method. A manufacturer may join the gown by adhesive bonding or by ultrasonic welding. It may assemble by hand, by semi-automated cells, or by a fully automated line. It may source, spin, and slit the base material in different ways, and it may package, label, and document conformity in different ways. Each

choice drives cost, throughput, and defect rate. Maddox selected among those methods, tested them, and built a production system around the selections it made. That system, not the performance standard, is what Maddox developed and what Maddox protected.

**19.** HHS later re-competed the requirement under solicitation 75A50322R00008. Maddox intended to compete for that work as the brand manufacturer on a team with AirBoss Defense Group as prime contractor, with additional manufacturing capacity supplied by subcontract manufacturers underneath Maddox.

**20.** HHS indicated that Maddox should team with AirBoss Defense Group, which was already a prime contractor to the agency on other personal protective equipment. The team was structured accordingly. AirBoss sat at the top as prime contractor and handled the government interface and invoicing. Maddox sat immediately beneath AirBoss as the brand manufacturer and the FDA manufacturer of record for the gown. Every subcontract manufacturer, consultant, and vendor on the gown program sat beneath Maddox and contracted with Maddox. That is why Maddox, and not AirBoss, holds the agreements with the other participants, including the agreements with NYES.

**21.** Under that structure the gown revenue was to flow from HHS to AirBoss, from AirBoss to Maddox, and from Maddox to the subcontract manufacturers it engaged. Maddox was to retain the manufacturer's margin on every gown delivered under the requirement.

**B. The parties sign the 2021 non-disclosure and non-circumvention agreement**

**22.** On November 11, 2021, Maddox, NYES, and Feinberg entered into a written Mutual Non-Disclosure and Request for Information Agreement (the "NCNDA"). Michael Saxon signed for NYES on November 12, 2021. Feinberg signed in her individual capacity on

November 12, 2021. The agreement names all three as "Parties" and identifies Feinberg separately as "an individual."

**23.** The recitals state the purpose: the parties were "evaluating the prospects and benefits of a business relationship" and needed to protect "Confidential Information ... including, but not limited to, trade secrets, proprietary information and certain intellectual property" exchanged for that "Mutual Business Purpose."

**24.** Paragraph 1 defines "Information" broadly. It expressly reaches "product design," "specifications," "methods," "processes," "formulae," "designs, drawings, test protocols, test results," "engineering, manufacturing, marketing, financial or personnel matter," and "customer and third-party information."

**25.** Paragraph 3 requires a receiving party to "hold any Confidential Information in the strictest confidence" and not to "directly or indirectly disclose any Confidential Information to any person or entity whatsoever" without the disclosing party's prior written instruction signed by its president or chief executive officer.

**26.** Paragraph 8 provides that "[a]ll Information shall remain the property of the disclosing Party and shall be returned to the disclosing Party upon written request," and that nothing in the NCNDA grants any license.

**27.** Paragraph 9 confirms that the confidentiality and non-circumvention promises stand on their own. It opens: "With the exceptions of this Agreement regarding confidentiality and non-circumvention, which shall be binding." It then adds that the agreement "is intended to be a continuing obligation between the Parties as to all Information communicated until notice of termination is acknowledged by the both of them."

**28.** Paragraph 13 fixes the duration. The confidentiality and non-circumvention obligations "shall continue for a period of five (5) years subsequent to the last disclosure and shall survive any termination of this Agreement."

**29.** Paragraph 14 bars solicitation. A receiving party may not "[s]olicit any persons or entities with which the Disclosing Party had contracts, was negotiating contracts, or was affiliated with the Disclosing Party for any transaction related to the business opportunity introduced by the Disclosing Party."

**30.** Paragraph 15 bars circumvention. The parties agreed they "will not attempt to bypass or circumvent the other with respect to the business dealings being introduced in connection with this Agreement," and that a party "will not in any manner contact or initiate contact with, or otherwise enter into any transaction of any kind whatsoever with a person, business organization or opportunity introduced by a party to this Agreement unless agreed in writing by the other party." The paragraph reaches "business entities or governmental entities introduced by the Disclosed Party" and forbids entering into "any letters of intent, term sheets, any other binding or non-binding agreements or transactions" with them "prior to executing a written and mutually acceptable compensation and fee agreement."

**31.** Paragraph 16 defines the protected asset. "[A]ny individual, entity, product or service introduced by any Party to any other Party, including addresses, contact information, and any information so provided, shall be deemed to be a business opportunity and constitute a trade secret and the good will of the Disclosing Party." It adds that "[a]ny unauthorized use or disclosure of Developmental Trade Secrets shall be deemed to be unfair competition and will cause irreparable harm to the Disclosing Party."

**32.** Paragraph 17 sets the conditions that follow from accepting an introduction. A receiving party may not "directly or indirectly communicate" with a Development Agent "except through the Disclosing Party or its authorized agents," and no transaction with a Development Agent "shall close, nor any Party receive any compensation with respect thereto," unless it closes through a mutually acceptable law firm or escrow company approved by the other party "wherein such other Party receives its agreed-upon compensation."

**33.** Paragraph 18 sets the remedy. Breach or threatened breach of the non-solicitation, non-circumvention, or trade-secret paragraphs "shall entitle the Disclosing Party to a permanent injunction and other equitable relief, without the requirement to post bond." It confirms that the parties' rights "shall be in addition to and not in limitation of any of the rights, remedies, and monetary or other damages or redress available to it at law or equity."

**34.** The NCNDA contains no limitation of liability, no cap on damages, no waiver of lost profits or exemplary damages, and no condition precedent to suit.

**C. What Maddox disclosed, and how it protected it**

**35.** After the NCNDA was signed, Maddox disclosed to NYES and Feinberg the categories of information it would take to build the Maddox gown. Those categories include, at least: (a) the engineering design of the Maddox AAMI Level 2 disposable isolation gown, including its cut, pattern, seam construction, and material specification as developed to the government specification; (b) the manufacturing process and sequence Maddox uses to produce that gown at federal volume, including its quality and inspection protocols; (c) the automation methods and equipment configuration Maddox had developed and was extending; (d) the identity of and commercial terms with Maddox's material suppliers and automation equipment vendors;

(e) Maddox's cost structure and pricing for the gown; and (f) the structure of the federal gown opportunity itself, including the AirBoss prime relationship and the intended subcontract tiering.

**36.** Maddox's disclosures were detailed and operational rather than general. Maddox showed NYES and Feinberg its ultrasonic welding equipment and capability and explained how it applied ultrasonic welding to gown assembly. It disclosed the adhesive bonding system it was developing as an alternative, including the testing behind it. It disclosed its plan to begin with manual labor and to move to semi-automated and then automated production, and the design of the automation systems it intended to build to get there. It disclosed the layout and sequencing of its assembly line. It disclosed how it spins the base material, how it slits the material to size, how it packages the finished gown, and how it configures and labels the shipping cartons. It disclosed its logistics processes and the conformity documentation it assembles to satisfy federal contract compliance. It identified the suppliers of the automation equipment it was acquiring.

**37.** Maddox also disclosed its pricing. Maddox told NYES and Feinberg the price at which Maddox intended to bid the gown under the re-competed requirement, together with the cost structure that supported that price. Maddox disclosed that information only because the NCNDA barred its use and disclosure. Maddox would not have disclosed its intended bid price to a prospective subcontract manufacturer on any other terms.

**38.** Taken together, the disclosed information is the whole of what Maddox had built to win the first federal gown award. It is not a single drawing or a single process step. It is a design, a method of making it, a supply chain, a capital plan, a compliance record, and a price, assembled over the course of performing a federal contract.

**39.** None of that information is generally known or readily ascertainable by proper means. It derives independent economic value from being secret. A competitor who obtains it

can bid the same gown at the same cost without paying for the development, and a competitor who obtains the bid price can undercut it by design rather than by guess.

**40.** Maddox took reasonable measures to keep the information secret. It required the NCNDA before disclosing anything. It limited disclosure to people with a need to know for the evaluation. It marked export-sensitive technical data. It kept the design, process, and vendor information out of public circulation. It did not license the information to NYES, and under paragraph 8 the information remained Maddox's property.

**41.** NYES and Feinberg received the information under an express duty to maintain its secrecy and to limit its use to the Mutual Business Purpose. They had no right to use it to compete.

**D. NYES is brought in as a prospective subcontract manufacturer**

**42.** Maddox introduced NYES to AirBoss Defense Group and to the federal Level 2 gown requirement. NYES had no role in that opportunity before Maddox brought it in.

**43.** On January 12, 2022, Maddox and NYES executed a Contract Manufacturing Agreement. On July 27, 2022, they executed Annex 1 to that agreement, which addressed the Level 2 gown program and set a base quantity of 26,350,000 gowns. Annex 1 separately provided that NYES had no right to market, re-sell, or replicate the Maddox Level 2 gown, and it contained a mutual non-circumvention covenant.

**44.** NYES never became a subcontract manufacturer to Maddox. Maddox never placed production with NYES. Maddox has never paid NYES any amount, in any form, at any time.

**E. Feinberg's written promise to the contracting officer**

**45.** On July 27, 2022, the same day Annex 1 was executed and in the same electronic signature envelope, Feinberg signed and delivered a letter to the HHS contracting officer, Sherica Teshome, concerning NYES's role in the gown procurement.

**46.** In that letter Feinberg represented that NYES "will not market, re-sell, or replicate the Maddox AAMI level 2 disposable isolation gown," and that any gown NYES offered to the government independently "will be of a different design and different part number."

**47.** Feinberg made that representation to the government, in writing, at the moment the parties' relationship was papered. It is a direct admission of the limits on what NYES could do with what Maddox had given it.

**48.** A subcontract manufacturer of a listed medical device must identify itself as such and must list the device it manufactures on its FDA establishment registration. The parties' agreements required NYES to do exactly that for the Maddox gown. NYES was required to list the Maddox gown and the Maddox part number on its FDA establishment registration and to identify itself as a subcontract manufacturer of that device.

**49.** NYES did not do so. Maddox is informed and believes, and on that basis alleges, that NYES never listed the Maddox gown or the Maddox part number on its FDA establishment registration and never identified itself as a subcontract manufacturer of the Maddox gown.

**50.** That omission had a consequence for Maddox. Maddox is informed and believes, and on that basis alleges, that HHS found the AirBoss and Maddox team technically unacceptable on the re-competed requirement on the ground that the Maddox gown did not appear on the NYES establishment registration.

**51.** NYES instead assigned the Maddox gown a part number of its own. Maddox is informed and believes, and on that basis alleges, that NYES registered the gown under its own

part number and offered it to the government as its own product, which is the outcome Feinberg's July 27, 2022, letter told the contracting officer would not occur absent a gown "of a different design and different part number."

**52.** Maddox did not depend on NYES for FDA coverage. Maddox holds its own FDA Establishment Registration, No. 3017489489, and the Maddox Level 2 gown is listed under it. NYES was one of several prospective subcontract manufacturers Maddox had lined up for the requirement, not the sole source of capacity. Maddox intended to allocate production among them based on performance. NYES was not necessary to Maddox's ability to perform, and Maddox's loss of the requirement followed from what NYES did with the information rather than from any shortfall in Maddox's own qualifications.

**F. NYES goes direct and takes the award**

**53.** Rather than perform as a subcontract manufacturer, NYES bid the federal gown requirement on its own and dealt directly with HHS.

**54.** On September 25, 2023, HHS awarded NYES contract 75A50323C00013 under solicitation 75A50322R00008, with an initial potential value of $290,770,800. HHS issued a stop-work order roughly a month later, advised the Government Accountability Office in March 2024 that it would terminate the award, and terminated it for convenience in September 2024 at a final value of $2,658,191.

**55.** Maddox did not initiate, encourage, fund, direct, or coordinate any bid protest of that procurement. A protest filed by AirBoss Defense Group was AirBoss's own decision, taken at AirBoss's own expense. Maddox is informed and believes, and on that basis alleges, that AirBoss incurred costs on the order of $2.5 million in connection with that protest. Maddox contributed nothing to it.

**56.** On June 11, 2024, Maddox's chief operating officer wrote to HHS confirming that AirBoss Defense Group is the sole authorized reseller of Maddox AAMI Level 2 gowns to the federal government through July 14, 2027. Maddox is, and at all relevant times has been, the manufacturer supplying AirBoss's federal gown award.

**G. The September 2024 award NYES is performing today**

**57.** On September 6, 2024, HHS awarded NYES a new contract under the same solicitation, 75A50324C00009, valued at $71,001,333.

**58.** That award is separate from the terminated 2023 award. NYES is performing it now and is delivering isolation gowns to the federal government under it.

**59.** Maddox is informed and believes, and on that basis alleges, that the gown NYES is delivering under contract 75A50324C00009 is the Maddox AAMI Level 2 gown design, or a design derived from it, produced using the manufacturing processes Maddox disclosed, from the same material vendors and with automation equipment obtained from the same suppliers Maddox identified to NYES. Maddox further alleges on information and belief that the part number under which NYES delivers is the Maddox part number or one derived from it, contrary to Feinberg's July 27, 2022, representation to the contracting officer. These allegations are made on information and belief because the technical content of the NYES proposal and deliverable is in the possession of NYES and the government, and Maddox will have evidentiary support for them after a reasonable opportunity for discovery.

**60.** NYES obtained the 2024 award without Maddox's written consent, without any compensation and fee agreement with Maddox, and without closing the transaction through any escrow or law firm approved by Maddox.

**61.** Maddox has received nothing from the 2024 award. NYES has received and continues to receive the revenue from it.

**H. What the conduct cost Maddox**

**62.** Maddox lost the manufacturer's margin on the gown volume the requirement called for. Under the team structure described above, that revenue was to reach Maddox through AirBoss on every gown delivered. Instead, it reached NYES directly, and Maddox received none of it.

**63.** The requirement was substantial. Under solicitation 75A50322R00008 the government awarded, among others, contract 75A50323C00013 to NYES on September 25, 2023 with an initial potential value of $290,770,800, contract 75A50324C00009 to NYES on September 6, 2024 valued at $71,001,333, contract 75A50324C00010 to AirBoss Defense Group with a potential value of up to $83,948,266, and contract 75A50324C00007 to Gredale LLC valued at $57,502,933.

**64.** Had NYES performed as the subcontract manufacturer it agreed to be, rather than competing against the team it had been brought into, the capacity NYES and the other subcontract manufacturers supplied would have been delivered under the AirBoss and Maddox team, and the gown volume would have consolidated there. Maddox had won the requirement before at the price the government accepted. NYES's decision to bid the requirement on its own, using Maddox's design, process, vendors, and price, fragmented the award and removed Maddox from the revenue chain.

**65.** Maddox's injury is not limited to the margin on gowns it did not sell. Maddox lost the enterprise value that a secured, multi-year federal manufacturing revenue stream would have

created, and with it the value of the business Maddox had built that stream to support. Maddox will prove the amount of that loss through expert testimony.

**66.** Defendants have been enriched by the same conduct. NYES is producing and delivering gowns under contract 75A50324C00009 today and is being paid for them. Maddox seeks that enrichment to the extent it is not captured in Maddox's own loss, and in the alternative a reasonable royalty on defendants' use.

## V. TIMELINESS

**67.** Maddox discovered the misappropriation on or about September 25, 2023, when HHS announced the award of contract 75A50323C00013 to NYES and notified unsuccessful offerors. Before that announcement Maddox did not know, and in the exercise of reasonable diligence could not have known, that NYES had bid and won the requirement using Maddox's information.

**68.** This action is filed within three years of that date. It is therefore timely under 18 U.S.C. section 1836(d) and Tex. Civ. Prac. & Rem. Code section 16.010(a).

**69.** The contract claims are timely as well. Under Texas law a cause of action for breach of contract accrues at each breach, and Tex. Civ. Prac. & Rem. Code section 16.051 sets a four-year period. The breaches pleaded here include conduct in and after September 2024.

**70.** The confidentiality and non-circumvention obligations remain in force. Under paragraph 13 they run for five years from the last disclosure, which occurred no earlier than July 2022.

## VI. CONDITIONS PRECEDENT

**71.** All conditions precedent to Maddox's right to recover have been performed, have occurred, or have been waived. Maddox has presented its claim to defendants as required by Tex. Civ. Prac. & Rem. Code section 38.002, and more than 30 days have passed without payment.

## COUNT I: BREACH OF CONTRACT

## (Against NYES and Feinberg)

**72.** Maddox incorporates the preceding paragraphs.

**73.** The NCNDA is a valid and enforceable contract. Maddox, NYES, and Feinberg are each parties to it. Feinberg signed individually and is personally bound.

**74.** Maddox performed its obligations under the NCNDA.

**75.** NYES and Feinberg breached paragraph 3 by disclosing and using Maddox's Confidential Information without the prior written instruction of Maddox's chief executive officer.

**76.** They breached paragraph 14 by soliciting HHS, an entity with which Maddox had contracts and was negotiating contracts, for a transaction related to the business opportunity Maddox introduced.

**77.** They breached paragraph 15 by bypassing and circumventing Maddox, by contacting and transacting directly with a governmental entity and business opportunity introduced through this agreement, and by entering into contracts 75A50323C00013 and 75A50324C00009 without Maddox's written agreement and without first executing a compensation and fee agreement with Maddox.

**78.** They breached paragraph 16 by using and disclosing Maddox's Developmental Trade Secrets without written authorization.

**79.** They breached paragraph 17 by communicating directly with a Development Agent other than through Maddox, and by closing a transaction and receiving compensation from it outside any approved escrow and without paying Maddox any agreed compensation.

**80.** They breached paragraph 8 by retaining and using Maddox's Information, which remained Maddox's property.

**81.** These breaches caused Maddox injury. Maddox lost the federal gown business that NYES took, lost the manufacturer's margin on the gown volume that would have flowed through it, lost the enterprise value that revenue stream would have supported, lost the value of the confidential information NYES converted to its own use, and lost the compensation paragraph 15 required NYES to negotiate before transacting.

**82.** Maddox seeks its actual damages, consequential damages, lost profits, damages for the diminution in the value of its business, and prejudgment and post-judgment interest. Maddox also seeks its reasonable attorney's fees under Tex. Civ. Prac. & Rem. Code section 38.001(b)(8), which authorizes recovery from an individual or an organization on a written contract.

## COUNT II: MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT, 18 U.S.C. SECTION 1836

**(Against NYES and Feinberg)**

**83.** Maddox incorporates the preceding paragraphs.

**84.** Maddox owns trade secrets within the meaning of 18 U.S.C. section 1839(3). They include the gown design, the manufacturing process and assembly sequence, the ultrasonic welding and adhesive bonding methods and the testing behind them, the automation plan and equipment configuration, the material spinning and slitting methods, the packaging, carton, and labeling configurations, the logistics and conformity documentation processes, the identities of

and terms with the material and equipment vendors, and the cost structure and intended bid pricing described above.

**85.** Maddox took reasonable measures to keep that information secret, including the NCNDA, need-to-know limits on access, export-sensitive marking, and the retention of ownership under paragraph 8.

**86.** The information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from its disclosure or use.

**87.** The trade secrets relate to a product used in and intended for use in interstate commerce. Maddox manufactures the gown in Arkansas and Texas, sells it through a prime contractor, and supplies it to a federal agency for a national stockpile.

**88.** NYES and Feinberg acquired the trade secrets under circumstances giving rise to a duty to maintain their secrecy and to limit their use, namely the NCNDA and their status as a prospective subcontract manufacturer.

**89.** NYES and Feinberg misappropriated the trade secrets by using and disclosing them without Maddox's consent, in a competing bid to HHS and in performance of contracts 75A50323C00013 and 75A50324C00009, knowing that their knowledge of the trade secrets was acquired under a duty to maintain secrecy and limit use.

**90.** The use of Maddox's pricing was a distinct misappropriation with a distinct effect. Maddox is informed and believes, and on that basis alleges, that NYES set its bid price for the re-competed requirement below the price Maddox had disclosed to it under the NCNDA, and that it was able to do so because it knew that price. A competitor who knows the incumbent's intended bid does not have to estimate it.

**91.** The misappropriation occurred after May 11, 2016, and continues.

**92.** Maddox is entitled under 18 U.S.C. section 1836(b)(3) to an injunction, to damages for actual loss, to damages for unjust enrichment not addressed in actual loss, or in the alternative to a reasonable royalty. Maddox's actual loss includes the margin on the gown volume it did not sell and the diminution in the value of its business.

**93.** The misappropriation was willful and malicious. Feinberg promised the contracting officer in writing that NYES would not replicate the Maddox gown and would offer only a gown of different design and part number, and then did the opposite. Maddox is entitled to exemplary damages under 18 U.S.C. section 1836(b)(3)(C) and to reasonable attorney's fees under 18 U.S.C. section 1836(b)(3)(D).

## COUNT III: MISAPPROPRIATION OF TRADE SECRETS UNDER THE TEXAS UNIFORM TRADE SECRETS ACT

**(Against NYES and Feinberg)**

**94.** Maddox incorporates the preceding paragraphs.

**95.** The information described above is a trade secret under Tex. Civ. Prac. & Rem. Code section 134A.002(6). It consists of design, engineering, technical, and business information, including a design, pattern, method, technique, process, and procedure. Maddox took reasonable measures to keep it secret, and it derives independent economic value from not being generally known or readily ascertainable through proper means.

**96.** NYES and Feinberg misappropriated that trade secret under Tex. Civ. Prac. & Rem. Code section 134A.002(3)(B) by using and disclosing it without Maddox's express or implied consent, knowing that their knowledge of it was acquired under circumstances giving rise to a duty to maintain its secrecy and to limit its use.

**97.** Their conduct also involved improper means under Tex. Civ. Prac. & Rem. Code section 134A.002(2), including breach of a duty to maintain secrecy and to limit use, and misrepresentation.

**98.** Maddox is entitled to injunctive relief under Tex. Civ. Prac. & Rem. Code section 134A.003 and to damages under section 134A.004(a), measured by actual loss, by unjust enrichment not taken into account in computing actual loss, or by a reasonable royalty. Maddox's actual loss includes the margin on the gown volume it did not sell and the diminution in the value of its business.

**99.** The misappropriation was willful and malicious within the meaning of Tex. Civ. Prac. & Rem. Code section 134A.002(7), because it was intentional and resulted from conscious disregard of Maddox's rights. Maddox is entitled to exemplary damages under section 134A.004(b) and to reasonable attorney's fees under section 134A.005(3).

**100.** This count is pleaded in addition to Count I. Tex. Civ. Prac. & Rem. Code section 134A.007(b)(1) preserves contractual remedies.

**COUNT IV: PERMANENT INJUNCTION AND EQUITABLE RELIEF**

**(Against NYES and Feinberg)**

**101.** Maddox incorporates the preceding paragraphs.

**102.** Defendants' use of Maddox's confidential information and trade secrets is continuing. NYES is performing contract 75A50324C00009 now, and each delivery under it uses what NYES took.

**103.** Maddox has no adequate remedy at law for that continuing use. The parties agreed in paragraph 16 that unauthorized use of Developmental Trade Secrets "will cause irreparable

harm to the Disclosing Party," and in paragraph 18 that breach "shall entitle the Disclosing Party to a permanent injunction and other equitable relief, without the requirement to post bond."

**104.** Maddox asks the Court to enjoin defendants from further use or disclosure of Maddox's confidential information and trade secrets, to order the return or destruction of all Maddox Information under paragraph 8, to compel the affirmative steps needed to protect the trade secrets under 18 U.S.C. section 1836(b)(3)(A)(ii) and Tex. Civ. Prac. & Rem. Code section 134A.003(c), and to impose a constructive trust on the proceeds of contract 75A50324C00009.

**105.** If the Court finds that exceptional circumstances make a prohibitory injunction inequitable, Maddox asks in the alternative for a reasonable royalty on future use under 18 U.S.C. section 1836(b)(3)(A)(iii) and Tex. Civ. Prac. & Rem. Code section 134A.003(b).

## VII. JURY DEMAND

**106.** Maddox demands a trial by jury on all issues so triable under Fed. R. Civ. P. 38(b).

## VIII. PRAYER FOR RELIEF

Maddox Defense Inc. asks the Court to enter judgment against New York Embroidery Studio Inc. and Michelle Feinberg, jointly and severally, and to grant the following relief:

a. Actual damages in an amount to be determined at trial, including lost profits and the diminution in the value of Maddox's business;

b. Damages for defendants' unjust enrichment not taken into account in computing actual loss, or in the alternative a reasonable royalty;

c. Exemplary damages under 18 U.S.C. section 1836(b)(3)(C) and Tex. Civ. Prac. & Rem. Code section 134A.004(b);

d. A permanent injunction and the other equitable relief described in Count IV, without bond;

e. A constructive trust on the proceeds of contract 75A50324C00009;

f. Reasonable attorney's fees under Tex. Civ. Prac. & Rem. Code sections 38.001 and 134A.005, and 18 U.S.C. section 1836(b)(3)(D);

g. Prejudgment and post judgment interest at the maximum lawful rate;

h. Costs of court; and

i. All other relief to which Maddox is entitled.

Dated: September 18, 2026.

Respectfully submitted,

**BATCHELOR LAW GROUP PLLC**

*Charles Batchelor*

**Charles Edward Batchelor**
Lead Attorney and Attorney-in-Charge
State Bar No. 24004542
S.D. Tex. Bar No. 24004542
**BATCHELOR LAW GROUP PLLC**
8111 Ashlane Way, Suite 203
The Woodlands, Texas 77382
Telephone: (832) 948-3635
charles@batchelorlg.com

CO-COUNSEL FOR PLAINTIFF:

**Sean M. Jones, Esq./L.L.M.**
(pending admission pro hac vice)
California State Bar No. 305370
**JONES TRIAL ATTORNEYS**
401 B Street, Suite 2010
San Diego, California 92101
Telephone: (619) 732-6377
Facsimile: (619) 730-7111
sean@jonestrialattorneys.com

ATTORNEYS FOR PLAINTIFF
MADDOX DEFENSE INC.